IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARDSON INVESTMENTS, INC.,
A New Mexico corporation,

    Plaintiff,

v.                                                       No. 1:17-cv-00103-SCY-KBM

JOHN DOE I,
QWEST CORPORATION, a foreign profit corporation,
GREENWICH INSURANCE COMPANY, a foreign company,
And SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,
A foreign profit organization,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES

Plaintiff moves for reimbursement of attorneys' fees incurred in connection with Defendants' removal of this case to federal court following the Court's Order (Doc. 62) granting Plaintiff's Motion to Remand this matter to state court. Doc. 65. As described in more detail below, the Court finds that when Defendants removed this case to federal court they had a legal basis for doing so and, therefore, the removal was not improvident. As a result, the Court DENIES Plaintiff's Motion for Attorneys' Fees Based on Defendants' Improvident and Objectively Unreasonable Removal (Doc. 65).[1]

### I.    BACKGROUND

---

[1] Although the Court previously remanded this case to state court, the Court has never issued a ruling on Plaintiff's request for attorney fees and costs and retains jurisdiction over the award of fees and costs under § 1447(c). *See Martin v. Franklin Capital Corp.,* 546 U.S. 132, 138 (2005) ("the predecessor to § 1447(c) was enacted, in part, because courts would otherwise lack jurisdiction to award costs on remand."); *In re C and M Properties, L.L.C.* 563 F.3d 1156, 1162 n. 2 (10th Cir. 2009) (distinguishing post-remand fee awards under § 1447(c) from improper retention of jurisdiction); *Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 353–54 (3d Cir. 2013) ("[F]ederal courts may decide 'collateral' issues," such as attorneys' fees, "after remand because such issues by definition cannot affect the progress of a case once it has been returned to state court.").

Plaintiff initially filed its Complaint in the Second Judicial District Court of the State of New Mexico. Doc. 1-1. Plaintiff alleged that Defendants were liable for damage to its property following a collision between Defendant Qwest's service truck and Plaintiff's building. Doc. 1-1. Plaintiff alleged that Defendant John Doe I was the driver of the vehicle responsible for Plaintiff's property damage. Doc. 1-1. Plaintiff further alleged that John Doe I was acting within the course and scope of his employment at the time of the collision. Doc. 1-1 at 7. Plaintiff acknowledged that the identity of John Doe I was unknown at the time of filing but would be determined through discovery. Doc. 1-1 at ¶ 3.

On January 20, 2017, Defendants removed the action to this Court. Doc. 1. Within seven days thereafter, Plaintiff's counsel sent an e-mail to Defendants' counsel seeking the name and address of John Doe I in anticipation of filing a motion to remand. Doc. 57 at 7. Defendant apparently declined to provide this information. *See doc.* 22 at 2-3. Nonetheless, Plaintiff filed its Motion to Remand on February 28, 2017. Doc. 22. In the Motion, Plaintiff contended that although the identity of John Doe I had not been conclusively determined, John Doe I was, in all likelihood, a citizen of New Mexico and that removal was therefore improper. Doc. 22. Plaintiff attached an affidavit by Charlie Wingate, the maintenance manager of the property, representing that he had asked the driver for identification and that the driver produced a New Mexico license. Doc. 22-1. On March 9, 2017, Defendants provided Plaintiff their initial disclosures. Doc. 28. Although the Court has not been provided a copy of these initial disclosures, Plaintiff represents that Defendants "named the driver but withheld the real party in interest's address and phone number (citizenship) from Plaintiff." Doc. 45 at 2.

Chief Magistrate Judge Karen Molzen held a scheduling conference on April 11, 2017. Doc. 43. Due to Plaintiff's Motion to Remand, Judge Molzen stayed discovery but ordered

Defendants to provide to Plaintiff information regarding the citizenship of the driver by April 14, 2017. Doc. 43. It appears that Defendant then provided this information on April 14, 2017. *See* Defendants' Notice of Admission, Doc. 48 (noting that "Defendants notified Plaintiff's counsel of Mr. Hummel's home address by electronic mail"); Plaintiff's Reply to Defendants' Response in Opposition of Plaintiff's Motion to Remand, Doc. 45 at 7 ("Under Order of the Court, the Defendants have disclosed Jonathan Hummel is a citizen of the State of New Mexico.").

Following Defendants' disclosure of this information, the Court held a status conference on May 11, 2017, to discuss the status of Plaintiff's Motion to Remand. During the status conference, the Court referenced *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008), and explained to Plaintiff that the onus was on it to either file a motion to amend the complaint or file briefing as to why the Motion to Remand should be granted without an amendment to the Complaint. *See* Doc. 55. Plaintiff subsequently filed its Motion for Joinder and Motion to File Second Amended Complaint on May 26, 2017. Doc. 56. On June 9, 2017, Defendant filed a response opposing Plaintiff's motion. Doc. 57. The Court, on July 21, 2017, entered an Order granting Plaintiff's Motion to Amend and ordered that the case be remanded to state court. Doc. 62. The Court did not, however, address the issue of attorney fees which, although briefly referenced in Plaintiff's Motion, was not substantively addressed in the parties' briefs.

**II.    ANALYSIS**

Plaintiff argues that it is entitled to attorney fees because Defendants improvidently removed this case to federal court. The starting point for analyzing such a claim is 28 U.S.C. § 1447(c), which states in relevant part, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the remand." In 2005, the Supreme Court noted that this language, "provides little guidance on when such fees

are warranted" and resolved a Circuit split over when fees should be awarded under § 1447(c). *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 134, 136 (2005). Specifically, the Court rejected a presumption in favor of awarding fees when a remand is issued and, instead, held, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136 (2005). Plaintiff does not argue that unusual circumstances existed; therefore, whether Plaintiff should receive attorney fees pursuant to § 1447(c) turns on whether Defendants had an objectively reasonable basis for removal.

Defendants removed the case to federal court on the basis of diversity jurisdiction. Specifically, at the time of removal, complete diversity existed because Defendant Jonathon Hummel had not yet been substituted in for John Doe 1. *See* 28 U.S.C. § 1441(b)(1) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded."). Plaintiff does not dispute that complete diversity existed at the time of removal and that Defendants therefore met the requirements of 28 U.S.C. § 1441 in removing the case to federal court. That federal law allowed Defendants to remove the case makes it very difficult for Plaintiff to establish that such removal was improvident. Indeed, Plaintiff cites no instance in which a court found that a defendant improvidently removed a case where complete diversity existed and removal occurred shortly after the complaint was filed.

Nonetheless, Plaintiff argues that removal here was improvident because, as the Court previously stated, "Defendants knew from the outset that Plaintiff intended to formally name as a defendant a person who would defeat diversity jurisdiction." Doc. 62 at 7. The Court, however, made this statement in the context of determining whether joining Hummel would unfairly prejudice Defendants. It found that Defendants' knowledge that Plaintiff intended to join

4

Hummel to the lawsuit undermined their later assertion that his joinder would unfairly prejudice them. While Defendants' knowledge of Plaintiff's intentions might have served to prevent Defendants from being prejudiced when those intentions came to pass, it does not follow that Defendants' knowledge of Plaintiff's intentions barred Defendants from removing the case to federal court at a time when complete diversity of citizenship existed.

Even so, Plaintiff's argument does have intuitive appeal. As the Supreme Court recognized, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin*, 546 U.S. at 140. Here, Defendants knew from the outset that Plaintiff was bringing a lawsuit against the driver of the vehicle. *See Compl,* doc. 1-1, at ¶ 3, ("John Doe 1 is the driver of the vehicle which caused the property damage alleged herein. The actual name is currently unknown to Plaintiff and will be substituted through discovery."). Although Plaintiff did not have ready access to John Doe I's citizenship, Defendant Qwest, as John Doe I's employer, did. Thus, Defendants also knew from the outset that the driver was a citizen of New Mexico and, as a result, his joinder in the lawsuit would destroy federal diversity jurisdiction. Knowing all of this, Defendants removed the case to federal court and declined to provide Plaintiff with their driver's citizenship. *See* Doc. 57 at 7 (Defendants' acknowledgment that almost immediately after Defendants removed the case, Plaintiff began seeking the name and address of the John Doe defendant so that it could get the remand process started). While Plaintiff sought information about John Doe I's citizenship so that it could have the case remanded to state court, Defendants filed a motion to dismiss. Doc. 5.

Defendants' litigation strategy is obvious. Defendants hoped to have the federal court rule on its motion to dismiss before Plaintiff could learn John Doe I's citizenship and have the case remanded to state court. Because the Court ordered Defendants to disclose John Doe I's citizenship before it ruled on Defendants' motion to dismiss, this strategy failed. The present question is whether fees should be shifted under § 1447(c) when a defendant pursues such a strategy.

The Tenth Circuit's decision in *McPhail v. Deere & Co.*, indicates that, even though the Court does not countenance such a strategy, adoption of such a strategy does not lead to fee shifting under § 1447(c). 529 F.3d 947 (10th Cir. 2008). In *McPhail*, a plaintiff sued a known defendant and three unidentified John Doe defendants. 529 F.3d at 950-51. The defendant removed the case to federal court on the basis of diversity jurisdiction. *Id.* The three John Doe defendants were then identified as entities whose citizenship would destroy diversity jurisdiction. *Id*. at 951. Even though the plaintiff had not moved to amend her complaint, she argued that the identification of these defendants destroyed diversity jurisdiction. *Id*. The Tenth Circuit disagreed. It found that, despite knowledge that these John Doe defendants were actually entities that destroyed diversity jurisdiction, the federal court retained jurisdiction until the plaintiff moved to amend her complaint and the court then determined that the parties to be joined were either indispensable or should be permissibly joined. *Id*. at 952.

In so holding, the Tenth Circuit did not indicate that it found anything untoward about the defendant litigating the case in federal court pending joinder of the diversity-destroying defendants. This is true even where the litigation in federal court proceeds after the diversity-

destroying defendants have been identified and the plaintiff is seeking remand.[2] *McPhail,* then, is inconsistent with Plaintiff's contention that Defendant's foreknowledge of Hummel's citizenship rendered its removal of the case improper.

Despite the fact that complete diversity of citizenship existed at the time Defendants removed this case, Plaintiff argues that a shifting of attorney fees is warranted, in part, because Defendants "actively obstructed Plaintiff from learning the identity and citizenship of the driver both before and after Plaintiff filed suit, and both before and after removal to the federal district court." Doc. 68 at 3. Plaintiff does not, however, cite to any legal obligation Defendants had to turn over Hummel's citizenship prior to the Court ordering Defendants to do so.[3] And, even if Plaintiff had established a discovery violation, Federal Rule of Civil Procedure 37 rather than § 1447(c) governs sanctions connected to a party's failure to comply with its discovery obligations.

Plaintiff also complains that Defendants' opposition to its motion to amend was unreasonable and that, in opposing the motion, Defendants cited cases out of context. Doc. 68 at 4-5. Plaintiff's motion for attorney fees, however, does not seek (and Rule 1447(c) does not govern) attorney fees in connection with Defendants' alleged unreasonable opposition to

---

[2] The Court acknowledges that Defendants in the present case knew Plaintiff intended to join a diversity-destroying defendant *before* they removed the case to federal court whereas in *McPhail* it is not clear when the named defendant knew the citizenship of the John Doe defendants. The Tenth Circuit in *McPhail* noted that the John Doe defendants were "identified as in-state distributors" after removal, but does not indicate whether this post-removal identification applied to all parties or just plaintiff. 529 F.3d at 951. Presumably, the originally named defendant, John Deere, had regular interactions with its distributors and so knew their identity and citizenship prior to removal. Regardless of whether defendant John Deere knew the citizenship of the diversity-destroying defendants before or after remand, *McPhail* indicates that until a diversity-destroying defendant is joined, it is not improvident to proceed with federal litigation – even where the diversity-destroying defendant has been identified and plaintiff has moved for remand.

[3] In an earlier brief, Plaintiff asserted that Defendants' initial disclosures "named the driver but withheld the real party in interest's address and phone number (citizenship) from Plaintiff." Doc. 45 at 2. Because Plaintiff did not make this assertion in their motion for attorney fees and because Plaintiff never provided the Court a copy of Defendants' initial disclosures, this issue is not presently before the Court. Nonetheless, the Court recognizes that it would not be unusual for a defendant corporation to provide counsel's address for witnesses who are employees of the corporation.

Plaintiff's motion to amend. Instead, it seeks attorney fees pursuant to § 1447(c) based on improvident removal. The issues related to Defendants' removal of this case to federal court (Hummel's citizenship) are distinct from the issues addressed in Defendants' opposition to Plaintiff's motion to amend (whether Hummel should be joined in spite of his citizenship). In other words, although Defendants' opposition to Plaintiff's motion to amend may have been unreasonable, this unreasonableness does not mean Defendants had no legal basis to remove the case when they did. Because Defendants' removal was objectively reasonable, *Martin* does not allow the award of attorney fees pursuant to § 1447(c). A different result would "undermin[e] Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin*, 546 U.S. at 140.

### III. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Attorneys' Fees Based on Defendants' Improvident and Objectively Unreasonable Removal (Doc. 65) is DENIED.

**IT IS SO ORDERED**

Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent